GREAT ATLANTIC & PACIFIC TEA CO. et al. v. ATHENS LODGE NO. 165, A. F. & A. M.

No. 14881.

Court of Civil Appeals of Texas. Fort Worth.

Nov. 7, 1947.

Rehearing Denied Dec. 19, 1947.

John Touchstone, of Dallas, for appellant Atlantic & Pacific Tea Co.

Justice, Moore & Justice, of Athens, for appellant Cathey & Carrell.

Paul B. Cox, of Jacksonville, and **P. B. Cox**, of Athens, for appellee.

SPEER, Justice.

This suit was filed in the District Court of Henderson County, Texas, by Athens Lodge No. 165, Ancient Free and Accepted Masons, against The Great Atlantic & Pacific Tea Company, a corporation, and Roy Cathey and Tommie Carrell, composing the partnership of Cathey and Carrell Truck Lines.

For brevity we shall refer to plaintiff as Lodge, to the corporation defendant as A. & P., and to the other defendants as Truck Lines.

The Lodge sought recovery against A. & P. for possession of the first floor of a described store building, certain unpaid rentals, and against all defendants, A. & P. and Truck Lines, damages to the building in controversy.

The Lodge alleged ownership of the building and that A. & P. had occupied the first floor of the building as plaintiff's tenant for more than ten years and had conducted one of its chain stores therein during that period of time; that A. & P. owed the Lodge the duty to take reasonable care of the building occupied by it; that it violated that duty. That in the manner of conducting its business it had wilfully and negligently, through its agents, servants and employees, caused great damage to said structure by backing heavy trucks and vans against the walls, crushing and breaking the walls, causing the bricks, mortar and concrete therein to crack and break in several enumerated places, and at the same time breaking the doors and door casings.

The Lodge alleged that defendant Truck Lines, while in the employ of A. & P., owned and operated the offending trucks and operated them under the direction of A. & P. when the wrongful acts were done. It was alleged that the damage done amounted to $2,000. Further allegations were made that the reasonable rental value of the part of the building so wrongfully withheld by A. & P. was $150 per month.

Prayer was for possession and reasonable rentals of the building since the Lodge's written request for possession as against A. & P. alone, and for $2,000 against A. & P. and Truck Lines, jointly and severally.

By an amended pleading A. & P. answered by general denial and specially that it held and occupied said premises under the terms of a written lease contract of date March 10, 1939, which contract contained a provision that A. & P. should have the option of nine consecutive extensions of one year each, and further provisions to the effect that if A. & P. should occupy the property beyond the term of said original lease or any extension, it should be deemed to be the exercise of such option for the current year; that A. & P. had so exercised its said option each year since the date of the lease contract and had so notified the Lodge in writing each time; that the Lodge had by the acceptance of the agreed rentals since March 10, 1939, ratified the provisions of said contract and is estopped to set up any want or lack of authority of its secretary to make the lease contract.

In a supplemental petition replying to A. & P.'s amended answer, the Lodge denied that A. & P. held a valid lease contract for the premises, but that such instrument as was claimed by A. & P. was void because not executed by the Lodge nor by any of its officers authorized to do so; that said asserted contract was not under the seal of the Lodge and in no way authorized under the by-laws and constitution of the Lodge and that its execution was never authorized by the Lodge; that the officers of the Lodge whose duty it was to handle such matters never knew of the existence of such contract until a very short time before this controversy arose

and that when the Lodge learned that A. & P. was claiming the right of occupancy under such a contract, the Lodge promptly repudiated the same; that the Lodge could not and did not ratify something it never knew or heard of and therefore could not be estopped to repudiate it.

Defendant Truck Lines answered by general denial and specially that if the Lodge had suffered any damages to its building (all of which was denied), it occurred more than two years prior to the institution of this suit and therefore was barred by the statutes of limitation.

At the trial, a jury was waived by all parties and the case tried to the court. Judgment was entered for the Lodge. The award was against A. & P. for possession of the building, for rentals at $150 per month unpaid after notice of the raise in rentals by the Lodge until possession should be surrendered, and against all defendants, jointly and severally, for $1,500 damages to the building. From such judgment both A. & P. and Truck Lines have appealed.

At the request of the appealing parties, the court filed findings of fact and conclusions of law. They were very full and complete and we shall refer only to the substance of each. The trial court designated the parties as they were in that court.

### Findings of Fact.

1. There is a description of the status of the respective parties as pleaded by plaintiff and need not be repeated.

2. The Lodge owns the building in controversy and A. & P. had been and still is occupying the first floor and has exclusive control thereof.

3. At all times material here A. & P. was engaged in an extensive chain-store grocery business, with stores in many towns, including Athens, Texas; that the manner of conducting said chain-store business involves assembling merchandise in a warehouse at Dallas, Texas and then transporting it to the various stores and hauling said merchandise from the warehouse to the stores in the area as a part of A. & P.'s general business.

4. Plaintiff's building has been damaged. (The nature of the damage is set out at

great length.) That various estimates in evidence necessary to repair it range from $1,500 to $2,000. From all evidence the court finds $1,500 to be a reasonable and proper amount of the damage that was done by the trucks of Truck Lines in a continuing process over a period of about eighteen months. (The court describes the manner in which the building was damaged by the trucks.)

5. The Truck Lines were negligent in the manner in which their trucks were backed into the building, causing them to strike and injure the building. The negligent acts of the Truck Lines were called to the attention of the A. & P. Manager and the District Superintendent and it failed to stop said negligent acts and to repair the damages or to employ other truck companies to do its hauling. That all of said damage was inflicted to the building within two years prior to the filing of this suit.

6. A. & P. went into possession of the lower floor of said building in the year 1934 or 1935 under a written lease contract for a term of one year and option to renew same for four consecutive years and it was renewed for four years. (The court here refers to the lease contract for its provisions.) That A. & P. claims right of possession under an instrument dated March 10, 1939, purporting to be signed by the Lodge "by W. A. Walker, Sect." (without the seal of the Lodge), as lessor, and by A. & P. "by R. H. Crocker" (with the A. & P. seal) as lessee. That this instrument purports to lease the premises to A. & P. for one year with the option of nine successive extensions for one year each. That this instrument is of an entirely different form from the original lease and does not obligate the lessee to do anything except to pay one month's rent of $90 but is very onerous on lessor. That the contract under which A. & P. claims was never presented to the Lodge and its principal officers knew nothing about it until a few months prior to the filing of this suit; that the said Walker had no authority to execute the same on behalf of the Lodge; that said contract was not kept in the secretary's files after he went out of office. When the damage to the building was discovered by the Lodge, its officers then learned for the first time that a written contract existed and then began a search for it and finally located it in a local bank. That all business matters of the Lodge must be transacted at regular meetings, one held each month. That under the by-laws of the Lodge, if it has a legal controversy it must seek counsel of an attorney and at the next regular meeting after counsel has been had, bring the matter before the Lodge and decide upon the course to pursue. That the Lodge was diligent in all these matters. That W. A. Walker had no authority from the Lodge to enter into the lease contract of 1939. That A. & P. was not injured by the Lodge not acting sooner. That the Lodge through its principal officers knew nothing about the contract of 1939 and did not ratify same by their acts.

7. A. & P. knowingly permitted the building to be damaged and made no effort to prevent it.

8. The Lodge served notice on A. & P. to give possession of the premises and in a regular meeting set the monthly rentals at $150 per month after November 1, 1946, and so notified A. & P.

### Conclusions of Law.

1. Truck Lines (Cathey and Carrell) are liable for the damages inflicted by their trucks.

2. A. & P. owed the Lodge a duty to use reasonable diligence to not injure the premises and to not permit it to be done; that A. & P. failed in this respect and is jointly liable for the wrongful acts of Truck Lines.

3. That A. & P.'s plea of estoppel is not available to it under the facts of this case and the Lodge is entitled to possession.

4. The Lodge is further entitled to possession due to the manner of the use of the building by A. & P. in knowingly permitting the damage to be done.

5. The Lodge is entitled to its rentals during pendency of this suit as set forth in the judgment of the court.

A. & P.'s First, Second and Third points of error are grouped and in substance are: (1) Plaintiff (Lodge) was estopped as a

matter of law to deny the validity of the 1939 lease contract. (2) Plaintiff is shown as a matter of law to have ratified the lease contract of 1939. And (3) error of the court in holding that the Lodge had no knowledge of the existence of the 1939 lease contract for the reason the uncontroverted testimony shows it was executed for its use and benefit.

██ Since the earliest days of our jurisprudence the general rule applicable to estoppel has been that one against whom estoppel has been invoked must be shown to have acted or spoken in a way that induced another to act in a particular manner to his hurt or injury, and if this be shown he will not be heard to assert an inconsistent position or contention. 17 Texas Jurisprudence 128, Sec. 2. A ratification or acquiescence in a known contention of one's adversary will often work an estoppel against a party, but as indicated, such contention must be known to the one against whom the estoppel is invoked. Ibid p. 132, sec. 5.

The court found as a fact that the Lodge had no knowledge of the existence of the 1939 instrument under which A. & P. claims right to possession. The undisputed testimony shows that under the by-laws of the Lodge all such matters must be transacted by the Lodge at regular meetings; that the purported contract of 1939 claimed by A. & P. was never mentioned nor discussed at such a meeting, nor do the minutes of the Lodge indicate the contrary; that the principal officers of the Lodge whose duty it was to preside and hear discussions of such matters at regular meetings never at any time heard of the existence of the instrument until a short time before the institution of this suit. This evidence was sufficient to support the fact finding by the court. A. & P. argues that the acceptance by the Lodge for a long period of time of the rentals of $90.00 per month amounted in law to a ratification of the lease contract. While the Lodge contends that for a period of five years preceding 1939 A. & P. had a valid contract under which it paid a rental of $90 per month, that the continuation of payments in that sum by A. & P. after the expiration of the contract was an occupancy by the

month at the former rate and was subject to termination by either party at will; that A. & P. was a satisfactory tenant during the time and the Lodge had not exercised its right to terminate the implied lease by the month, until it discovered the damages being done to the building, and then sought a termination.

██ As a basis for its contention, A. & P. pleaded ratification by the Lodge but did not allege nor otherwise contend that by reason of the acceptance of rentals by the Lodge it acted in any manner to its hurt or injury nor does the testimony show in any respect that A. & P. has been damaged or injured in its interests by reason of the long acceptance by the Lodge of the monthly rentals. A. & P. cannot now rely upon the principle of estoppel as an instrumentality for profit; such could only be availed of to protect A. & P. against the loss of a right already acquired; the burden of proof was upon A. & P. to show it relied upon the conduct of the Lodge and that it was misled to its injury, and had no notice of the lack of knowledge of the Lodge that a contract was in existence. Kuykendall v. Spiller, Tex.Civ.App., 299 S.W. 522, writ refused; Carnell et ux. v. Kinser et al., Tex.Civ.App., 196 S.W.2d 941, writ refused. Under substantial testimony developed the court found against A. & P. as to estoppel and ratification.

██ Fourth and fifth points assign as error the findings of the court to the effect that the Lodge had no knowledge of the 1939 contract because A. & P. says such finding was without evidence to support it, and in any event was against the great weight and preponderance of the testimony, and such as that relied upon by the Lodge to support the finding was too vague and uncertain to have any probative force. We cannot agree with A. & P.'s contentions in these respects. It would involve too much to enumerate the testimony offered to support the court's findings, but sufficient to say we have read all the testimony and the application of the familiar rule of giving credit to the testimony supporting the finding and disregarding that to the contrary, when the evidence is conflicting as in this case, there was ample evidence to support the finding.

By sixth point, A. & P. insists that even if it be true that the Lodge did not have knowledge of the existence of the contract, A. & P. was entitled to retain possession of the building until April of 1947. This contention is based upon the theory that having begun new and additional years after the expiration of the original contract ending in 1939, there was an implied contract to extend the time of expiration each time for a full year. That principle is applicable in some cases, but not in this, for the reason at expiration of the former valid lease in 1939 a new proposed lease was tendered to the Lodge by which A. & P. would continue its possession as tenant and it was rejected by the Lodge. Nothing more was ever done about a new lease in so far as the Lodge knew, but it later developed that W. A. Walker, who was secretary of the Lodge, entered into a ten year lease contract with A. & P., signing it for the Lodge by him as secretary, without seal. The court found as a fact the execution of that lease by Walker was without authority. We think the court was warranted in this finding under all the testimony. He had the by-laws pertaining to such matters before him. Then too, A. & P. knew, at least from the former contract of lease, that the Lodge was a Fraternal organization and that its former contract had borne the seal of the Lodge, and the provisions of the new lease were so at variance with the former A. & P. must have known that some radical change had been injected into the contract. Court found that the new proposed contract required A. & P. to do nothing except pay one month's rent and imposed very onerous burdens upon the Lodge. A reading of the proposed contract supports these findings.

Seventh point asserts error in the court's finding that the Lodge was entitled to recover rentals at $150 per month after November 1, 1946, because there was no evidence to support such finding. The evidence shows that when the controversy arose about the damages to the building the Lodge at a regular meeting passed a resolution to raise the rent to $150 per month and so notified A. & P. At the same time the Lodge requested possession; A. & P. refused possession and likewise refused to pay the higher rentals. Viewing the situation as did the trial court that the Lodge was entitled to possession, it had the right to demand a higher rental if possession was not surrendered. We can see no error in the holding. It cannot be said there was no evidence to support it.

By its eighth point error is assigned to the judgment of the court forfeiting the contract because of the damages being done to the building in the absence of a provision in the contract giving the Lodge that right. Laying aside for the present the fact found by the court that the Lodge had no knowledge of the contract under which A. & P. claims, we think it a sound principle that a tenant is under the implied contractual duty, "To use the property in a tenantlike manner, and without permitting or committing injury to the property." See Friemel v. Coker, Tex.Civ. App., 218 S.W. 1105, 1107 and authorities there cited. It is elemental that a breach of a contract, if timely urged by the other party, will warrant its termination by a court. It may be doubted if a party to a contract can make a binding obligation by which he may immunize himself from the results of his own negligence.

Ninth and Tenth points charge error in entering judgment against A. & P. for damages, because: (a) There was no credible testimony to support a finding that Truck Lines damaged the building; and (b) If there was any such evidence it was wholly insufficient and of no force and effect.

We see no merit in these contentions. We have already referred to parts of the testimony relating to the acts of Truck Lines backing their trucks against the building with such force as to cause debris to fall both outside and inside the building, and that the building was observed immediately to have cracks in the wall and other evidences of the effect of it being so struck. The court found these matters in fact to exist and the findings are much less vague and uncertain than the manner in which we have referred to it.

Twelfth point asserts error in entering judgment against A. & P. for $1,500

damages "For the reason that there was no evidence establishing the value or condition of the premises at the time of the claimed negligence." The evidence shows without objection by A. & P., in effect, that the difference in the market value of the building just before and just after the damages were inflicted was from $2,000 to $2,500 and, further, that the necessary expense of repairing the damages done by Truck Lines would be from $1,500 to $2,000. See 27 Tex.Jur. 337, sec. 199. The assigned error must therefore be overruled.

This brings us to the errors assigned by Truck Lines. They are: (1) Limitations and (2) Where several persons acting independently of each other without unity of action, one is not liable for the wrongs of another, and until it appears just what amount of damages were inflicted by each no judgment can be entered against one of them.

■ The evidence in this case is highly conflicting with reference to the time the injuries were inflicted to the building in controversy. At least many deductions could be drawn from the testimony in this respect. It appears that there were marks on the building showing where trucks had been backed against the wall prior to two years before the institution of this suit. But there is positive evidence that Truck Lines' vehicles struck the building very hard and caused pieces of brick, mortar and plaster to fall from the wall at a time less than two years before the suit was filed. The testimony further shows that those most interested did not discover the cracks in the wall prior to that time, and one witness who had served in all the positions of the Lodge during the period of time involved here, said that all the damages to the building were inflicted within two years prior to the time suit was filed. The trial court gave credence to these phases of the conflicting testimony which he, as the trier of facts, had a right to do. There being evidence to support his finding we will not disturb it.

■ The theory advanced in Truck Lines' second point above mentioned, is that the testimony indisputably shows that other trucking companies hauled freight to A. & P.'s place of business during all the time their own trucks were hauling; that the several trucking companies were acting independently of all other haulers engaged in that business and the testimony does not show that these other haulers did not also back up against the walls and do at least a part of the damages attributed to Truck Lines in this case. And if such other concerns did any part of the damage to the building, it was not proven just what part was done by defendant Truck Lines. The contention is sound in principle if such facts really existed, but there is no testimony that any other person or company than defendant Truck Lines ever did any damage to the building. It presents only a possibility that they may have done so. Upon the other hand there is positive testimony of Truck Lines' wrongful acts resulting in damages within the limitation period, and as stated the trial court accepted same as true.

■ Again we note that there was no jury trial in this case and the trial court sat in the dual capacity of trying the facts and law. As such his fact findings are the equivalent of a jury finding on special fact issues. 3 Tex.Jur. 1102, sec. 771; Corn v. First Texas Joint Stock Land Bank of Houston, Tex.Civ.App., 131 S.W.2d 752, writ refused.

■ We have refrained from quoting the testimony, for to do so would entail too much time and space. In some instances the testimony is conflicting and the trial court appears to have found all controverted points in favor of the Lodge. A careful inspection of the record shows there is substantial testimony to support the findings under points discussed. In such instances, if by accepting all evidence favorable to a fact finding and indulging every legitimate conclusion favorable to that finding, which might have been drawn from the facts proved, and disregarding all evidence to the contrary, a jury might have found for the party in whose favor the facts were so found, it will be deemed there is sufficient evidence to support the finding. Wininger v. Fort Worth & D. C. Ry. Co., 105 Tex. 56, 143 S.W. 1150; Burroughs v. Smith, Tex.Civ.App., 294 S. W. 948, writ refused; 17 Tex.Jur. 909,

sec. 910; many more such cases could be cited but are not considered necessary.

A. & P.'s eleventh point of error, which we have not yet discussed, presents a more serious question. It reads: "The court erred in rendering judgment against the defendant (A. & P.) upon findings four and five (contained in the findings of fact of the trial court), because such findings are too vague, indefinite and uncertain to support the judgment."

The quoted point of error standing alone may not extend to the real questions of law discussed under it, but under authority of Fambrough v. Wagley, 140 Tex. 577, 169 S.W.2d 478, we may look to the language found in the "point" and the statement and argument thereunder to determine its full extent and applicability in arriving at whether or not reversible error is presented.

In the statement of facts and the argument presented by A. & P. in its brief, we find the full text of the fourth and fifth findings of fact by the trial court and by argument these findings are discussed, in which contention is made that they do not support the conclusions of law reached by the court and judgment entered, wherein the Lodge was awarded judgment against A. & P. for the $1,500 damages to the building.

We cannot discover from the two fact findings (4th and 5th), nor from any other part of the court's findings of fact, wherein the court specifically finds that the Truck Lines were such employees of A. & P. as would render that institution primarily liable for all the wrongful acts of the Truck Lines while transporting merchandise from the warehouse at Dallas to the retail store at Athens, Texas.

Apparently the only testimony of a material character concerning the relationship between A. & P. and the Truck Lines was given by Mr. Rhinehart, Sales Manager of A. & P. He said in substance that during the time involved here, Truck Lines hauled their merchandise from the Dallas warehouse to the Athens store under a contract between A. & P. and Truck Lines; that the Truck Lines operated under the Railroad Commission and that the only rate of pay to them for services so performed was fixed by the Railroad Commission; that A. & P. had nothing to do with which route Truck Lines followed, nor when deliveries were made, the kind of drivers they employed, nor the number of drivers or "swampers", nor the manner nor place the driver of the truck should park same, whether with the side of his truck to the door or the end of the truck at the door; that A. & P. has no right to control anything Truck Lines did in connection with nor the manner in which they transported the merchandise.

We think other parts of the testimony fairly supports the court's fact findings to the effect that Truck Lines did carelessly and negligently jam its heavy trucks into the rear of the Lodge's building upon the occasion detailed by Mr. Speak, the Manager, and Miss Rhodes, employee of A. & P., and that this occasion was less than two years prior to the institution of the suit. We also think the record justifies a conclusion that the striking of the building at that time was the beginning of the damages done to the building, even though it was added to and increased little by little by a continuing process of wrongful acts thereafter as found by the court.

If we are correct in these deductions, then A. & P. was not responsible for the original wrongful and negligent act of Truck Lines in striking the building and could not be made to respond in damages for any injuries done on that occasion. A. & P.'s manager witnessed the striking of the building by Truck Lines on the occasion last referred to and advised both the Assistant and General Supervisors of the incident. The manager further testified that in so far as he knew nothing was ever done about it and the court found from all the testimony that A. & P. made no effort thereafter to prevent similar occurrences, further finding that the damage done on the first occasion was added to and increased little by little and by a continuing process.

The record is wholly silent as to what part of the damages to the building was done by the first or original blow, nor was there any effort made to show what

part of the ultimate damage to the building occurred thereafter. Under a proper showing we think A. & P. could have been properly held liable for damages inflicted upon the building after the first occasion when, as we have pointed out, it had full knowledge of the manner in which Truck Lines was damaging the Lodge's building and took no steps to prevent it. In the absence of any evidence to show what damages were incurred to the building after A. & P. could be held liable therefor, it was improper to enter judgment against A. & P. for all the damages inflicted, which necessarily included those incurred on the occasion when the truck first struck the building, for which item A. & P. could not be held liable.

In Panhandle & S. F. Ry. Co. v. Wiggins, Tex.Civ.App., 161 S.W.2d 501, 506, writ refused, this language was used: "It is well settled that where it appears that only part of the damage suffered by the plaintiff was the result of the acts charged against the defendant, and a part thereof was caused by some other agency or person (an act by Truck Lines for which A. & P. was not responsible), a judgment against the defendant cannot be sustained unless the evidence is sufficient to show what part of the damage is attributable to the acts of the defendant." (Citing many authorities.)

We conclude that the error assigned by the eleventh point as discussed by us requires a reformation of the judgment entered.

Referable to all other points of error (excepting No. 11), it appears that the principal contention presented for reversal of this judgment is that the testimony does not support the court's fact findings, nor does it support the judgment entered. With the exception above pointed out, we overrule the contention. It is somewhat refreshing to note that no procedural errors are assigned in this appeal.

For the reasons herein stated, we reform the judgment of the trial court to the extent that the Lodge recover of A. & P. possession of the building and all unpaid rentals, including $150 per month since November 1, 1946, but that the Lodge's recovery for damages done to the building against A. & P. be denied. That the Lodge recover of Truck Lines its damages for $1,500 for injury done to the building. The judgment of the trial court as thus reformed will be affirmed.

Under authority of Rule 448, Texas Rules of Civil Procedure, costs of this appeal will be taxed, one-third against A. & P. and two-thirds against Truck Lines.

On Motion for Rehearing.

Both defendants, A. & P. and Truck Lines, have filed motions for rehearing in this cause. We have concluded that there is merit in A. & P.'s assignment of error No. 6 to this court. It reads: "The judgment of affirmance (as reformed by us) is erroneous because based upon no evidence of reasonable rental value either before or after November 1, 1946." We have again gone carefully through the entire record and have concluded that the judgment of the trial court and that entered by us with reference to the amounts of rentals awarded to the Lodge was wrong.

The original petition in this case was filed September 3, 1946. In the amended petition, filed October 22, 1946, the Lodge made allegations upon which it sought to recover for the use and retention of the building by A. & P. in this language: "That this plaintiff has served notice on said defendant (A. & P.) and here again notifies said defendant to vacate said building and premises at once. That its tenancy has been from month to month at the will of this plaintiff and it is now entitled to possession of said building and premises. That the defendant has refused to vacate said building to this plaintiff's great damage. That the reasonable rental value of said premises is the sum of $150.00 per month and plaintiff is entitled to said sum as a rental for the time defendant keeps possession of same and is entitled to the further sum of $1,000.00 against said defendant for withholding said building from plaintiff without authority and after due notice to vacate same."

We note that neither the judgment of the trial court nor that of this court in reforming that of the trial court makes plain

the amount the Lodge should recover against A. & P. for the wrongful withholding of the premises after the Lodge had attempted to terminate what it deemed the tenancy of A. & P. at will by the month.

The testimony of the secretary of the Lodge shows without dispute that A. & P. had paid and the Lodge had accepted rentals from A. & P. at $90 per month up to the time of the institution of this suit (September 3, 1946); that all rentals had been paid by check on the first of each month in advance. We must conclude from this that the September rent was paid. It is obvious to us that no amounts were paid by A. & P. for the months of October, November and December of 1946 and none paid for January, 1947. The judgment of the trial court was entered January 9, 1947.

█ It is apparent from the record that A. & P. had occupied the building for a number of years, paying $90 per month for its use, and that it desired to continue using the premises at the same price. It is reasonably certain that A. & P. was still occupying the building at the time of trial. We think these facts present some substantial evidence of the reasonable value of the use of the building; it seems to us that A. & P. must concede that the use and occupancy were reasonably worth at least that amount. The Lodge made no effort to prove that the reasonable value of the use of the premises was in excess of that amount at the time of trial. There is some authority for holding that a court cannot assess damages in certain kinds of actions accruing after the institution of the suit, but the general rule is that each case is to be determined largely upon the facts of that case. We think that in this case the trial court could not properly award to the Lodge any amount of damages in the form of rentals in any specified amount for any period of time after the date of the judgment entered. We decline to adjudicate at this time what amount, if any, the Lodge shall recover against A. & P. for withholding possession after the date of the judgment but do hold that payment of such judgment as we enter will cover payment for all previous months including January, 1947. Any subsequent controversy between the parties will of necessity have to be determined by another action.

In A. & P.'s original brief filed in this appeal, some of the matters now assigned as to damages for the wrongful withholding, often referred to as rentals, were raised by its seventh point of error, but they were treated in the brief as "merely immaterial digressions, because the judgment should be reversed in its entirety." It is apparent to us now that we did not, at that time, fully grasp the real significance of the point.

█ It is our view of this case that from the nature of the Lodge's asserted cause of action and the defenses urged by the defendants that the case was tried upon the theory that the Lodge was seeking possession of the premises, damages to the building, and for the reasonable value of the use of the premises during the time A. & P. wrongfully withheld possession from the Lodge. In such cases if the court awards possession to the plaintiff, as it did in this case, it may in the same action render judgment in favor of the plaintiff against the defendant for the damages sustained by reason of the withholding, provided such damages are the immediate consequence of the act complained of by plaintiff and are the natural and necessary result of that act and flow as a direct and natural consequence therefrom. 15 Am.Jur. 406, sec. 16.

In view of what we have said in connection with these motions for rehearing, we set aside the judgment heretofore entered by us and withdraw that part of our comment upon the effect of the seventh point of error by A. & P. as follows: "We can see no error in the holding. It cannot be said there was no evidence to support it." These conclusions also require withdrawal of the last three paragraphs of the original opinion, the first paragraph beginning with the words, "Referable to all other points of error," etc., and substitute for that part of the opinion withdrawn the following:

In all points of error by A. & P. except points 7 and 11, it appears that the principal contention presented for reversal of this judgment is that the testimony does not support the court's fact findings nor the judgment entered. For the reasons stated in the

original opinion and these conclusions we reform the judgment of the trial court to the extent that the Lodge recover of A. & P. possession of the building and the sum of $360 for the wrongful withholding of the possession of the premises during the months of October, November and December, 1946, and January, 1947; that the Lodge take nothing against A. & P. for damages done to the building; that the Lodge recover of Truck Lines its damages for $1,500 for injury done to the building. As thus reformed the judgment of the trial court will be affirmed. Except in the respects mentioned, both motions for rehearing are overruled.

Under authority of Rule 448, Texas Rules of Civil Procedure, costs of this appeal will be taxed one-third against each the Lodge, A. & P. and the Truck Lines.