W. C. WISDOM et al., Appellants,

v.

J. H. WIDENER, Appellee.

No. 6719.

Court of Civil Appeals of Texas.

Amarillo.

Jan. 6, 1958.

Rehearing Denied Feb. 3, 1958.

common boundary line between the two said tracts of land. Since 1948 appellant Ratliff has owned the northwest ¼ of Section 58 with the said tract of land being adjacent to appellee's Section 71 with a common corner thereto and a common boundary line between the two said tracts of land. While the two tracts of land owned by appellants are both located in Section 58 and they both join appellee's Section 71 on the south of the same, the two said tracts of land are not contiguous, but are separated by a third tract of land approximately 508 feet wide, which is also south of and adjacent to appellee's Section 71 and has a common boundary line with Section 71. The latter tract of land is owned by a Mr. Shearer who is not a party to this suit.

Appellants filed separate answers but pleaded common defenses of not guilty, a general denial, title by the 10-year statute of limitation, an agreed boundary line and a boundary established by acquiescence. In order to establish ownership and right of possession of the strips of land in question, the common boundary line between the tracts of land involved must be determined. Both strips of land in dispute are very small, that being used and claimed by appellant Wisdom is about 1¼ acres or less and that being used and claimed by appellant Ratliff is about 1½ acres or less.

The case was tried by the court without a jury on September 25, 1956, as a result of which judgment was thereafter rendered establishing a boundary line in accordance with surveys made by a well recognized surveyor and awarding to appellee a part of the strips of land being litigated but not all of such and quieting his title thereto, from which judgment appellants perfected appeals and have filed a joint brief in this court. At the request of appellants, the trial court made and filed its findings of fact and conclusions of law in which the court found in effect that appellee Widener had owned Section 71, Block G, Certificate 424, except for 8.13 acres previously herein mentioned, since September 23, 1948; that the boundary line between Sections 71 and

John B. Stapleton, Floydada, for appellants.

Wilson P. Kermichel, Lockney, Richard F. Stovall, Floydada, for appellee.

PITTS, Chief Justice.

This suit was filed in the form of trespass to try title but in reality involves a land boundary line dispute principally. Appellee, J. H. Widener, instituted the action against appellants, W. C. Wisdom and Mars Ratliff, seeking to establish title and possession in himself to two small strips of land along the south boundary line of Section 71, Block G, and the north boundary line of Section 58, Block G, both located in Floyd County, Texas. Since 1948 appellee has owned all of Section 71, except 8.13 acres previously deeded to the Fort Worth & Denver Railway Company for right-of-way purposes, which small tract is not here involved. Since 1937 appellant Wisdom has owned 53.2 acres out of the northeast corner of Section 58 with the said tract of land being adjacent to appellee's Section 71 with a common corner thereto and a

58 was never fixed by agreement of the parties or their predecessors in title; that the parties or their predecessors in title had never at any time by acquiescence or agreement recognized any fence line or any other line as a boundary between Sections 71 and 58 and no fence was ever constructed along the south line of Section 71 for the purpose of establishing a boundary line between Section 71 and 58; that appellants failed to establish title in themselves by limitation to the strips of land claimed by them respectively since a preponderance of the evidence revealed that appellants and those whose titles they hold never had peaceable and adverse possession of any part of Section 71; that the testimony of W. D. Newell, County Surveyor of Floyd County, Texas, together with other competent evidence before the court, established that the boundary between Sections 71 and 58, Block G, should be as follows:

"Beginning at an angle iron set in public road at S.E., corner of Section No. 71, Block 'G', Certificate No. 424, E. L. & R. R. Co., Floyd County, Texas, from whence a point on transit line bears South 6⁷⁄₁₀ ft., and a ¾ in. pipe found set for the S.E. corner of a 53²⁄₁₀ acre tract out of the N.E. corner of Section No. 58, Block 'G', bears South 1087¹⁄₁₀ ft.

"Thence in a Westerly direction in a straight line one mile to a point, the extreme west end of said transit line from whence a white limestone found set in public road bears South 7¹⁄₁₀ ft. and another limestone found set in public road bears South 396 ft.

"The transit line referred to is a line established by W. D. Newell, County Surveyor of Floyd County, Texas, and indicated on Exhibit A as such."

The trial court further found that appellee, J. H. Widener, is the owner in fee simple of all of the land situated and lying north of the said described boundary line of Section 71, except the 8.13 small acreage

previously mentioned, and the title to such land should be in all things quieted for the benefit of appellee. The trial court's conclusions and judgment are consistent with such findings.

The material facts are strongly controverted by the parties and the record reveals the existence of animosity between the litigating parties. It appears that this is a fact case principally as distinguished from a law case. Appellants have presented 30 points of error challenging the findings and conclusions of the trial court, charging separately that there is no evidence to support the trial court's judgment or its material findings and conclusions, or that the evidence is insufficient to support such, or that such findings are contrary to the overwhelming weight and preponderance of the evidence, making such clearly wrong and unjust. Appellee resists the charges made by appellants. The parties have thus joined issues on several material and we think controlling questions to be determined, namely, whether or not there is evidence of probative force to support the issue of 10-year statute of limitation, or the establishment of a boundary line by agreement or acquiescence and finally whether or not there is evidence of probative force to support the trial court's judgment.

Consequently there are elementary principles of law that must be applied here. In a non-jury case the judge of the court is the trier of facts. He has the exclusive function of determining the credibility of the witnesses and the weight to be given their testimony. He has the right to reconcile conflicting testimony if possible or to accept as true or reject all, any part or none of the testimony of any witness if he thinks such is proper. He may accept the theory presented by either party and reject the theory presented by the adverse party if he thinks the evidence justifies such action. If there be sufficient evidence of probative force to support the findings of the trial court and its judgment,

the parties to the suit and the appellate courts are bound thereby and such a judgment will not be disturbed on appeal. To test the sufficiency of the evidence to determine if it will support such findings and judgment, we must give credence only to the evidence and circumstances favorable to the findings and judgment and disregard all evidence to the contrary, indulging every legitimate conclusion which tends to uphold such findings and judgment. Glenn v. Glenn, Tex.Civ.App., 183 S.W.2d 231; Boston Ins. Co. v. Rainwater, Tex.Civ.App, 197 S.W.2d 118; Great Atlantic & Pacific Tea Co. v. Athens Lodge No. 165, A.F. & A.M., Tex.Civ.App., 207 S.W.2d 217; Truelove v. Truelove, Tex.Civ.App., 266 S.W.2d 491; Banks v. Collins, 152 Tex. 265, 257 S.W.2d 97; Hill v. Foster, 143 Tex. 482, 186 S.W.2d 343. It has likewise been held that the judgment of a trial court of competent jurisdiction will be presumed to be correct until and unless a prejudicial error to the contrary has been affirmatively shown from a proper record of the proceedings had in the trial court. Smothers v. Gawlik, Tex.Civ.App., 214 S.W.2d 894, 3 Tex.Jur. 424, Secs. 302 and 303; Bennett v. Jackson, Tex.Civ.App., 172 S.W.2d 395; Erback v. Donald, Tex.Civ.App., 170 S.W. 2d 289.

■ The parties agreed by stipulation that appellee, J. H. Widener, had "record or paper title to Section 71, Block G, Certificate 424"; that appellant, W. C. Wisdom had "record or paper title" to 53.2 acres, the same being a part of the northeast ¼ of Section 58, Block G, Certificate 80, with its north boundary line being a common line with a part of the south boundary line of the J. H. Widener Section 71, to which it was adjacent; that appellant, Mars Ratliff, had "record or paper title" to the northwest ¼ of Section 58, Block G, Certificate 80, with its north boundary line being a common line with the south boundary line of the J. H. Widener Section 71, to which it was adjacent; and that the issues to be determined are that of boundary and title by limitation.

The record reveals that appellee, J. H. Widener, acquired title by warranty deed in 1948 to all of Section 71, Block G, except for 8.13 acres which had been previously deeded to the Fort Worth and Denver Railway Company for right-of-way purposes and which small tract is not here involved, and appellee's deed was shown to have been recorded. It was agreed between the parties that the list of transfers tending to show appellee's chain of title may be considered introduced in evidence without the inconvenience of bringing the necessary records into court to establish such. Appellee, J. H. Widener, testified in effect that he moved onto his said land about Christmas, 1948, and had since lived there continuously; that before purchasing his said land the south boundary line of the same was pointed out to him by R. T. Spence, the previous owner thereof; that there had been no fence separating Sections 71 and 58 since he had owned Section 71 but there was a turn row or a private road separating the two said sections; that Mr. Shearer and appellants, Mr. Wisdom and Mr. Ratliff, owned separate tracts of land south of his said Section 71 and adjacent thereto; that in 1949 appellant Wisdom built an irrigation spillway from his water well over the south line of Section 71 onto appellee's land and during the same year appellant Ratliff moved an irrigation ditch across appellee's south line of Section 71 and onto appellee's land with the ditch elevated; that up until the time appellants encroached upon his land he had found no occasion to raise the question about the boundary line; that he soon thereafter had a talk with appellants and told them it appeared to him that they were encroaching over the south line of Section 71 and onto his land but they seemed to think such made no difference and they were satisfied with the situation as it existed; that he asked them about having the boundary line established by a surveyor but they were not interested in such a proposal; that he talked with appellants at various times about the matter, showed them where he understood the boundary

between them to be and tried to solve the disputed line problem with them to no avail; that in 1953 he employed County Surveyor W. D. Newell to survey and mark the line between Sections 71 and 58; that the surveyed and marked line was plainly visible and revealed that appellants were encroaching upon appellee's land with appellant Wisdom taking about 1¼ acres and appellant Ratliff taking about 1½ acres of appellee's land; that appellant Ratliff said to him, "I know I am over on you but Mr. Spence lived here so long and he never did say a word about it. Now you come in here claiming it"; that appellant Ratliff then offered to buy the strip of land in dispute between them in order to "straighten it out," but the witness refused to sell Ratliff only the disputed strip of land but did offer to sell to him all of his interest in Section 71 but Ratliff did not want the entire section; that he also talked again to appellant Wisdom about settling the disputed line but Wisdom would not say much about it except that he was not satisfied with the recent survey line that Mr. Newell had located in 1953 as the boundary line between Sections 71 and 58; that the witness then proposed to Wisdom that he get a surveyor and have the section line between them established and that if such a line came out reasonably close to the line Newell had established the witness would accept it but Wisdom did not have such a survey made; that he thereafter discussed the matter with both appellants without getting any results; that appellants never at any time during their conferences claimed any part of his land or of Section 71 by limitation and did not say much else about the matter other than they were satisfied with the use of the land being made by them. After hearing the testimony of both appellants and others seeking to establish the claims of appellants, appellee was again called as a witness and again reiterated his claims and denied the claims of appellants and particularly their claims of established boundary line by agreement or acquiescence of the parties as well as denying appellants' claims of title by limitation. He further testified in effect that there were no grounds for either of such claims and that he had continuously on numerous occasions objected to the use being made of his land by appellants and that he at no time agreed to accept the irrigation ditch or spillway built by appellants as the boundary line or any other line except the boundary line known as the "transit line" established by County Surveyor Newell.

The testimony given at length by W. D. Newell, County Surveyor of Floyd County, Texas, was next offered by appellee and his qualifications as a witness capable of testifying about survey lines in issue were admitted by appellants. In his testimony Newell gave a brief history of Block G, in which block the land here involved is located, together with several other sections of land therein located. Section 70 in Block G is due east of and adjacent to Section 71 with a north-south common boundary line between them. Section 59 in Block G is located due east of and adjacent to Section 58 with a north-south common boundary line between them. Sections 59 and 70 are adjacent to each other with a common east-west boundary line between them, which extended west as a common east-west boundary line between Sections 58 and 71, the same being the north boundary line of Section 58 and the south boundary line of Section 71. Newell testified in effect that Block G was first located in 1877 and insofar as he knew it had not since been surveyed as a block; that it was termed as a "built up" block, that is, "built up by piecemeal"; that different surveyors or different groups at different times had sought to run lines by picking up lost fence corners, old rocks and various other locations from roads and fences but could not run such lines very far without running through somebody's yard or into somebody's house; that such surveyors often did not leave substantial markers that could thereafter be located and used; that as a result there have been conflicts, disputes, uncertainty, confusion

and doubt concerning the locations of boundary lines between all of the sections located in Block G, and such has been particularly true concerning the location of the boundary line between Sections 71 and 58; that he first sought to locate the boundary line between Sections 71 and 58 in 1953 by starting at a two-inch iron pipe set at the northeast corner of Section 59, thence by survey projected a line west between Sections 59 and 70 and between Sections 58 and 71 and thus established what is being referred to as the "Transit Line" between the said sections. Thus the said transit line so located between Sections 58 and 71 furnished the basis for appellee's claims as a boundary in this suit. If the trial court had accepted the said transit line as a common boundary line between Sections 58 and 71, in our opinion such would have been binding on all parties and this court. But Newell testified further in effect that he again sought in March, 1954, to establish a proper boundary line between Sections 58 and 71 by starting at a ¾ inch pipe located and shown by the deed records to be the southeast corner of Wisdom's 53.2 acre tract of land here involved, thence running north in accordance with the metes, bounds and distances shown in the deed records to the northeast corner of Wisdom's 53.2 acre tract and there marked the same with an angle iron; that from such point, by the use of other markers found on the ground and from callings and distances found in the deed records, he established all four corners of Wisdom's tract of land and connected them together, thus encompassing all of Wisdom's 53.2 acres; that by such survey he established and marked the northeast corner of Section 58, the same being the southeast corner of Section 71, six and seven-tenths feet north of the location of the said corner as found by his survey in 1953.

The trial court accepted the last established corner fixed by Newell at the northeast corner of Section 58 and the southeast corner of Section 71. It also accepted the northwest corner of Section 58, the same being the southwest corner of Section 71, established at the extreme west end of the transit line fixed by Newell in his 1953 survey and not thereafter disturbed by Newell. As a common boundary line between Sections 58 and 71 the trial court connected the two said established points or corners by a straight line running practically parallel with the transit line and a few feet north of the same. In establishing such common boundary line, the trial court recognized the two common corners of the said Sections 58 and 71 as fixed by Newell and starting from the east common corner, followed the common boundary line fixed by Newell between Wisdom's land and Section 71 to the northwest corner of Wisdom's land and from there prolonged a straight line west to connect with the other common corner fixed at the west end of the transit line, which point so fixed was also the northwest corner of Ratliff's ¼ section of land and the common boundary line so fixed was Ratliff's north boundary line.

In our opinion the common boundary line so fixed by the trial court is binding upon appellants and this court. By so establishing such boundary line, appellants each got a fraction more land than they would have received if the trial court had accepted the transit line previously fixed by Newell and relied upon by appellee and appellee got a fraction less land than he would have received otherwise, but appellee has accepted the common boundary line as fixed by the trial court.

The briefs and the trial court's judgment reveal that all parties and the trial court gave credence to the testimony of the County Surveyor, Newell. On page 49 of appellants' brief they say in part:

"The evidence demonstrates clearly that there is doubt, uncertainty, dispute and confusion with reference to the true boundary line. W. D. Newell, County Surveyor of Floyd County for almost twenty years and assistant

to the county surveyor of Floyd County for thirteen years prior to becoming county surveyor himself, a licensed and registered public land surveyor *or* more than thirty years experience in Floyd County, testified positively that there is conflict, dispute and doubt as to the location of the boundary lines between Surveys 71 and 58, Block G (SF 91). And who should know better than a man of his experience and qualification? From his testimony it is clear that there is such confusion, doubt, dispute and uncertainty."

We think appellants have properly evaluated the testimony of W. D. Newell. Since there was "uncertainty, dispute, conflict, confusion and doubt as to the location of the boundary line between Surveys 71 and 58, Block G" up to the time of the trial and since there was evidence of probative force to the effect that no common boundary line was established by agreement or acquiescence of the party litigants, in our opinion, the trial court was fully justified in finding and concluding that appellants failed to establish a boundary line between Sections 58 and 71 by agreement or by acquiescence of the parties. Gulf Oil Corp. v. Marathon Oil Co., 137 Tex. 59, 152 S.W.2d 711 and other authorities there cited. The record does not disclose when this suit was filed but the parties went to trial on amended pleadings filed in September, 1956. In any event, there had been, according to an abundance of evidence presented, a continuous disagreement of the party litigants about the common boundary line between them long before the suit was filed and for more than four years before the suit was tried. There was ample evidence showing numerous conferences were held by the parties in an effort to settle their dispute without results being accomplished. For the same reasons previously shown the trial court was justified in finding and concluding that appellants failed to establish title by the 10-year statute of limitation to the small

strips of land respectively as claimed by them under the provisions of Article 5510, Vernon's Ann.Civ.St. On the issue of limitation there is positive evidence refuting such but assuming the evidence was conflicting, under the authorities cited and numerous others, findings of the trial court based on conflicting evidence will not be disturbed on appeal. White v. Burch, Tex. Civ.App., 19 S.W.2d 404; Foster v. Buchele, Tex.Civ.App., 213 S.W.2d 738. In our opinion there are numerous other authorities cited under Article 5510, V.A.C.S., supporting the trial court's findings and conclusions to the effect that appellants failed to establish title by the 10-year statute of limitation.

For the reasons stated there is ample evidence to support the findings of the trial court in support of its judgment. The overwhelming weight and preponderance of the evidence is not shown to be contrary to the findings and judgment of the trial court. Appellants' points to the contrary are all overruled and the judgment of the trial court is affirmed.

CHAPMAN, J., not participating.