**VILBIG BROTHERS, INC., Appellant,**

**v.**

**C. H. LEAVELL & COMPANY, Appellee.**

**No. 7058.**

Court of Civil Appeals of Texas.

Texarkana.

Dec. 16, 1958.

Rehearing Denied Jan. 13, 1959.

Wm. Andress, Jr., Dallas, for appellant.

Leachman, Gardere, Akin & Porter, Dallas, for appellee.

DAVIS, Justice.

The opinion heretofore handed down in this cause is withdrawn and the following is substituted therefor.

Appellee's statement of the nature and the result of this suit is found to be correct and we adopt the same with minor changes and additions. It reads as follows:

"Appellee had the general contract for the erection of a water treatment plant at Wylie, Texas, which included the construction of some streets. It sublet three phases of the work to ap-

pellant by three written subcontracts as follows:

"Subcontract 169–B for grading, excavation and earth work on a lump sum basis of $48,500.00;

"Subcontract 169–C for ready mixed concrete on a unit basis;

"Subcontract 169–F for paving, curb and gutters on a unit price basis.

"Appellant filed this suit for the retained percentages under subcontracts 169–B and 169–F and for extras under said three subcontracts, as follows:

| | |
|---|---|
| "Retainage under subcontractor 169–F | $ 4,960.23 |
| "Extra dirt work under subcontract 169–F | 4,779.40 |
| "Damages from faulty engineering | 3,500.00 |
| "Deductions from contract 169–C | 536.47 |
| "Damages for fraud as to amount of dirt under subcontract 169–B | 17,600.00 |
| "Retainage under subcontract 169–B | 4,971.70 |
| "Reasonable attorneys' fees | 10,000.00 |
| "Total | $46,347.80 |

"Appellee tendered the retainages under subcontracts 169–B and 169–F, and asked that there be credited thereon the following items:

| | |
|---|---|
| "Cost of correcting hump in paving laid by appellant | 381.69 |
| "Cost of correcting subsidence in paving laid by appellant | 2,076.69 |
| "Total | $2,458.38 |

"Reasonable attorneys' fees for establishing above offsets.

"On a trial before the court without a jury, the trial court found:

"(a) That appellant was entitled to retainages of $4,971.70 under subcontract 169–B and $4,702.94 under subcontract 169–F, totaling $9,674.64.

"(b) That appellant was indebted to appellee in the sum of $381.69 for correcting a hump in the paving and $2,076.69 for correcting a subsidence in the paving laid by appellant, totaling $2,458.38 expended by appellee to correct defects in appellant's work, by which amounts said $9,674.64 total retainages should be reduced, leaving a net balance from appellee of $7,216.26.

"(c) That appellant is entitled to $500.00 attorney's fee, in addition to said sum of $7,216.26 so that appellant is entitled to judgment against appellee for $7,716.26.

"(d) Appellee's claim for the reasonable attorney's fee provided in said contracts for enforcing the provisions thereof, and appellant's claims for additional grading, faulty engineering, deductions from ready mixed concrete (under) contract 169–C and fraud in reference to the quantity of earth to be removed under subcontract 169–B should be rejected."

The trial court accordingly entered judgment in favor of appellant against appellee for the sum of $7,716.26, together with interest thereon from the date of said judgment at the rate of 6% per annum and all costs of suit.

Each party excepted to the respective portions of said judgment adverse to it, and appellant perfected this appeal.

Appellant brings forward three points of error in which it complains of the action of the trial court in allowing the cost of correcting the hump, cost of correcting subsidence in paving, denial of extra dirt work under contract 169–F, and denial of damages for fraud under subcontract 169–B, and contends that the evidence will not support such judgment.

Appellee challenges each point and brings forward four counter-points with respect to each of the items.

We have carefully examined the record in this case including the contracts and the statement of facts, and find that appellant's points are in part well taken and must be sustained.

It appears from the record that any error of construction was the direct result of defective engineering. We find this to be a fact as established by the evidence in the case. To demonstrate our finding, we point out that the contract itself provided that appellee would furnish all the engineering services, which included fixing the grades for the paving and testing the compaction of the soil for density in the streets as well as all other engineering services, including back-fills to be made by appellant.

Appellant had two contracts in connection with the paving. One was for rough grading to within $\frac{3}{10}$ of one foot of the finished job. Under the other contract it was to do the fine grading and paving the street. It finished the rough grading and the job was certified as being 100% completed and was paid in full, except a 10% retainage which appellee contends it was entitled to withhold until such time as the general contract had been completed and it had collected in full from the city and appellant has furnished appellee with affidavits showing that all bills had been paid by appellant in connection with said subcontract; this retainage was not for alleged discrepancies. Appellant completed the rough grading for the street about the 1st of March, 1956, and the street was used by other contractors in laying water lines which crossed the street in at least five different places. After the street was paved, an unusual rain fell in the area, and we quote the testimony of one of appellee's engineers on this question:

"I think the fact that a roof downspout in that area greatly affected it, because it introduced water into the area after it had been complete. It introduced more than the maximum amount required to get maximum density. That's why you get stuck in the rut because you have more than your maximum amount of water."

This was on the question of the subsidence of the paving.

When appellant went to do the fine grading under its paving contract, it was found that the street was four feet too high for a distance of about 200 to 300 feet on one end, and was as much as 15 to 18 inches low in other places. The only reasonable conclusion that could be reached as to what caused these discrepancies would be faulty engineering. Appellee's witnesses admitted that appellant did everything its engineers instructed appellant to do, not only from the standpoint of grading to specific levels as set by the engineers, but also packed the soil to the density required by the contract. There is some evidence of differences during the operations, but the record reveals that all differences were resolved before appellant completed its work on the respective contracts, and all work was finally accepted by the engineers for appellee. The only evidence that would indicate any defect in workmanship is based solely upon assumption. If the hump in the pavement was higher than the grade fixed by the engineer when the paving was completed, there is no evidence to establish that fact. If the hump was in the pavement when completed, appellant had done the work in keeping with the terms of its contract to do the work according to the specifications and requirements of the appellee's engineer and the

defect was in the engineering, not in the work done by appellant. The same is true with reference to the rough grading.

■ The only evidence as to what caused the subsidence of the pavement was the rain, testified about as hereinabove quoted. Appellee's engineers testified that the place where the subsidence occurred was at a place where a fill had been made by appellant, but that the fill had been compacted to 95% density according to the Proctor Test which was in keeping with the contract of appellant and was tested, approved and accepted by appellee's engineers. Both the grading work and the paving were accepted by the chief engineer of appellee whose responsibility was absolute under the contract and the evidence fails to show any defect of workmanship or material on the part of appellant that caused the subsidence. Appellee having admitted its liability, less the alleged sums for alleged defective workmanship, and having failed to prove that the conditions were caused by defective workmanship or material on the part of appellant, the sums for correcting the hump and the subsidence by appellee were erroneously allowed.

■ After appellant completed its work and moved off the job, it was not an insurer against subsequent events. Our Lady of Victory College & Academy v. Maxwell Steel Co., Tex.Civ.App., 278 S.W.2d 321. It was the burden of appellee to prove its right to deduct the amounts in accordance with the pleadings and contract. Foran v. Smith, Tex.Civ.App., 228 S.W.2d 251; Hamilton v. Van Hook, 26 Tex. 302; McCormick & Ray on Texas Law of Evidence, 1st Ed., Sec. 24, p. 30.

There was an engineer of appellee by the name of Montoya on the job most of the time who constantly observed the work of appellant and who required appellant to do its work exactly as instructed by said engineer of appellee. This engineer left the job before it was completed. It is undisputed that appellant and this en-

gineer had numerous differences during the work, but the work was always done to the satisfaction of this particular engineer and was accepted by the chief engineer. Montoya left the employ of appellee after the error in the grading contract was discovered, and his departure is unexplained.

After appellant completed the job and the hump and subsidence had been discovered, and suit had been filed, appellee issued and delivered its check to appellant for the 10% retainage in full and made no claim for damages at that time; although, appellee had already corrected the hump and subsidence prior to issuing the check. The check carried a "paid in full" and "release of all claims" and appellant refused to accept the check.

Appellee contends that it is entitled to the cost of correcting the hump and correcting the subsidence on an unconditional warranty for a period of one year as provided in the contracts, whether or not it proved any defect in material or workmanship furnished by appellant. Briefly, the unconditional warranty does not require the subcontractor to respond to the prime contractor for damages resulting from faulty engineering on the part of the prime contractor's engineer, nor for an "act of God." Appellee's chief engineer testified that in his opinion the subsidence in the pavement was caused by the unusual rain that fell in the area which caused the soil to dissolve into a more compact density than required by the contract. We quote from 43 Am.Jur., 830, Sec. 85:

"Where the contractor has performed the contract in accordance with the specifications, payment of the contract price may not be resisted by reason of the fact that the permanence of the improvement has been affected by the action of the elements or the condition of the soil."

Appellee contends that it was entitled to written notice on the extra rough grading upon which the appellant sued under

its paving contract. Appellee had actual notice of the deficiencies, the deficiencies were the result of faulty work on its part, and it acted on the deficiencies by correcting a part itself and requiring appellant to correct the balance, and it, therefore, waived its right to written notice under the contract. The law in such cases is so well settled that citation of authorities is deemed unnecessary.

It is undisputed by appellee that the charges made by appellant for the extra rough grading done by appellant under its paving contract immediately before paving were reasonable and necessary. It is appellee's contention that the two contracts "dove-tailed." The contracts are two separate and distinct contracts and the mere fact that the same sub-contractor held both sub-contracts did not require it to correct any defect of engineering by the engineer of appellee that occurred under the grading contract. The duty of appellant under the paving contract was the same as it would have been if it had been a total stranger to the grading contract. This contention is overruled.

We find that the evidence is sufficient to support the trial court's judgment on the issue of fraud as pleaded under sub-contract 169–B and the judgment of the trial court is affirmed on that issue. Wisdom v. Widener, Tex.Civ.App., 309 S.W. 2d 496.

■ We find that the evidence is sufficient to support appellant's claim for $4,-779.40 for extra sub-grading as alleged in its petition and the judgment of the trial court in this respect is reversed and judgment is here rendered for appellant for said sum.

■ Other matters are urged by appellant, but are not assigned by points of error and are waived. All relief not granted herein is respectfully denied. The judgment of the trial court is affirmed in part and in part reversed and rendered.

Both appellant and appellee are given 15 days in which to file a motion for rehearing herein.